Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Alison L. Gregoire
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 25, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:23-cr-00120-TOR |
| Plaintiff, | Plea Agreement |
| v. | |
| MICHAEL WESTON MATHEWS, | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Alison L. Gregoire, Assistant United States Attorney for the Eastern District of Washington, and Defendant Michael Weston Mathews ("Defendant"), both individually and by and through Defendant's counsel, Amy H. Rubin, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to the Indictment, filed on November 7, 2023, which charges Defendant with Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), a Class C felony.

Defendant understands that the following potential penalties apply:

a.    a term of imprisonment of not more than 15 years;

Plea Agreement – 1

b.      a term of supervised release of not more than 3 years;

c.      a fine of up to $250,000;

d.      restitution; and

e.      a $100 special penalty assessment.

2.      <u>Supervised Release</u>

Defendant understands that a separate term of supervised release may be imposed. Defendant further understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

a.      5 years in prison if the offense that resulted in the term of supervised release is a Class A felony,

b.      3 years in prison if the offense that resulted in the term of supervised release is a Class B felony, and/or

c.      2 years in prison if the offense that resulted in the term of supervised release is a Class C or D felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.      <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.      sentencing is a matter solely within the discretion of the Court;

Plea Agreement – 2

b.      the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.      the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.      the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.      the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.      the Court may reject recommendations made by the United States or Defendant.

4.      Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.      pleading guilty in this case may have immigration consequences;

b.      a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.      removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.      no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

Plea Agreement – 3

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.    the right to a jury trial;

b.    the right to see, hear, and question the witnesses;

c.    the right to remain silent at trial;

d.    the right to testify at trial; and

e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    Elements of the Offense

The United States and Defendant agree that in order to convict Defendant of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), the United States would have to prove the following beyond a reasonable doubt.

a.    *First*, on or about and between August 4 and 6, 2023, Defendant knowingly possessed, in the Eastern District of Washington, a Smith & Wesson, model SD9VE, 9-millimeter caliber pistol bearing serial number FZF3044, and 12 rounds of 9-millimeter caliber ammunition bearing headstamp SIG 9MM LUGER.

Plea Agreement – 4

b.    *Second*, the firearm and ammunition had been shipped or transported from one state to another or between a foreign nation and the United States;

c.    *Third*, at the time Defendant possessed the firearm and ammunition, he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

d.    *Fourth*, at the time Defendant possessed the firearm and ammunition, he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

7.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the United States Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On September 4, 2015, Defendant was convicted in the U.S. District Court for the District of Idaho of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 846. The judgment imposed a sentence of eighty-seven months' imprisonment followed by four years' supervised release. Defendant was released from prison on June 4, 2021, which is when his supervised release began. Defendant subsequently resided in Spokane, Washington under the courtesy supervision of the U.S. Probation Office for the Eastern District of Washington.

Around 9:55 PM on August 6, 2023, N.L.M. called 911 emergency response in Spokane to report her boyfriend, later identified as Defendant, was threatening

Plea Agreement – 5

to kill himself. N.L.M. said Defendant was drinking, was really angry, and told her he "was gonna shoot himself in the head." N.L.M. said Defendant "has a gun in his car, and he keeps trying to get to his car." N.L.M. said Defendant had a blue BMW at their shared residence.

The Spokane Police Department responded to the residence. Police arrested Defendant for fourth degree assault (domestic violence) and interfering with reporting of domestic violence. Police told Defendant his car was being towed for evidentiary impound based on an allegation he possessed a firearm. Police also told Defendant his probation officer had been notified of the situation.

Officers of the U.S. Probation Office for the Eastern District of Washington, accompanied by Special Agent ("SA") Michael Northcutt of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), conducted a probation search of Defendant's car the next day, on August 7, 2023. Supervisory U.S. Probation Officer Richard Law and U.S. Probation Officers Amber Andrade and Corey McCain all attended the vehicle search at the Spokane Police Department impound lot. Probation Officer Andrade noticed a compartment to the immediate left of the steering wheel and, upon opening the compartment, immediately saw a black-frame pistol. Probation officers also found paperwork and prescription pill bottles establishing Defendant's dominion and control of the car.

SA Northcutt cleared the pistol for safety and observed it was loaded with 12 rounds of ammunition. SA Northcutt then took custody of the pistol and ammunition. The firearm was a Smith & Wesson, model SD9VE, 9-millimeter caliber pistol bearing serial number FZF3044. The ammunition was 9-millimeter caliber rounds bearing headstamp SIG 9MM LUGER.

SA Northcutt, an interstate nexus expert, examined the pistol and ammunition and concluded that the pistol was manufactured in Connecticut while the ammunition was manufactured in either Arkansas or Kentucky. Thus, SA

Plea Agreement – 6

Northcutt opined that both the pistol and ammunition had traveled in interstate or foreign commerce to reach the Eastern District of Washington.

Subsequent deoxyribonucleic acid (DNA) testing completed by the Washington State Patrol Crime Laboratory found the DNA profile obtained from swabs of the firearm is of mixed origin consistent with having originated from three individuals, and is suitable for comparison. Defendant was included as a contributor. Assuming three contributors, it is 440 septillion times more likely to observe this DNA profile if it originated from Defendant and two unknown contributors rather than three unrelated individuals selected at random from the U.S. population.

## 8. The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

## 9. United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

### a. Base Offense Level

The United States and Defendant agree that the base offense level for Felon in Possession of a Firearm and Ammunition is 20 because Defendant committed the instant offense after sustaining one felony conviction of a federal controlled substance offense. See U.S.S.G. § 2K2.1(a)(4)(A).

Plea Agreement – 7

b.    Special Offense Characteristics

The United States and Defendant make no agreement with respect to the application of any specific offense characteristics.

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and, if applicable, (b), if Defendant does the following:

i.    accepts this Plea Agreement;

ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv.    provides complete and accurate information during the sentencing process; and

v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct.

Plea Agreement – 8

e. Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigation Report.

10. Incarceration

The United States agrees to recommend a sentence of twenty (20) months' imprisonment.[1]

Defendant may recommend any legal sentence.

11. Supervised Release

The United States and Defendant each agree to recommend three (3) years' supervised release. Defendant agrees that the Court's decision regarding the length and conditions of Defendant's supervised release is final and non-appealable; that is, even if Defendant is unhappy with the length or conditions of supervised release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of supervised release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

_____

[1] Defendant was sentenced to time served in his supervised release matter, cause number 3:14-CR-00170-AKB-1, on August 28, 2024. The "time served" was roughly thirteen months. The misconduct underlying the supervised release matter was part of the same course of conduct as the instant matter. The United States' recommendation takes these facts into consideration.

Plea Agreement – 9

      b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

      c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

12.    <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.    <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14.    <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15.    <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence,

Plea Agreement – 10

Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

16.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.    Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

b.    The United States may prosecute Defendant on all available charges;

Plea Agreement – 11

c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

18.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Plea Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Plea Agreement – 12

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____          9/25/24
Alison L. Gregoire                                   Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          9/25/24
Michael Weston Mathews                           Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          9/25/24
Amy H. Rubin                                          Date
Attorney for Defendant

Plea Agreement – 13